# IN THE MATTER OF THE KINGS COUNTY ELEVATED RAILWAY COMPANY.

*Rapid transit — chap. 606 of 1875 — decision of two sets of commissioners conclusive upon the General Term — confirmation of their report — Consent of the local authorities — who may apply for the appointment of commissioners by the General Term — Right of the commissioners to impose conditions.*

Where, in pursuance of chapter 606 of 1875, the commissioners appointed by the mayor of a city have decided that an elevated road should be built therein, and have located its route, and thereafter, the property owners refusing to consent thereto, commissioners have been appointed by the General Term, and have reported in favor of the construction of the said road and the adoption of the said route, the determination of the two sets of commissioners is conclusive upon the General Term as to the necessity of constructing the road upon the route selected.

The duty of the General Term, upon an application to confirm the report of its commissioners, is confined to an inquiry as to whether their proceedings have been regular and fair, and whether their determination is reasonable and just.

The court, in passing upon the report of its commissioners, is in no way affected by the fact that the local authorities have consented or refused to consent to the construction of the road.

The fact that the mayor's commissioners, in locating the route, provided that the road might be constructed on either of two streets, or both, furnishes no reason for refusing to adopt their report.

It is not necessary that the application for the appointment of commissioners by the General Term should be made by the mayor's commissioners; it may be made by the company who desire to construct the road.

The report of the commissioners will not be rejected by the General Term because their determination is, in some respects, subject to conditions.

APPLICATION to confirm the report of commissioners appointed by the General Term, under chapter 606 of 1875, to report upon the construction and location of an elevated railroad in the city of Brooklyn.

Upon the application of fifty tax-payers of the city of Brooklyn the mayor thereof appointed five commissioners, to determine upon the necessity of constructing a railway therein, and to determine the route thereof. The commissioners having reported in favor of the construction of a road, and determined its route, the property owners refused to consent to it. Thereupon, on the application of the Kings County Elevated Railway Company, the General Term appointed three commissioners, who reported in favor of the construction of the road.

*Gilbert & Cameron, Henry J. Scudder* and *James Emott,* for the petitioners.

*Edgar M. Cullen,* for self and Henry S. Cullen.

*William C. DeWitt,* for F. A. Schroeder and other owners on Fulton street

DYKMAN, J.:

The scheme of the rapid transit act of 1875, so far as it is involved in the case at bar, is that whenever it shall appear by the application of fifty householders and taxpayers of the county that there is need therein of a steam railway, the mayor of the city shall appoint five resident commissioners, who shall have full power and authority to determine upon the necessity, and if they find such railway to be necessary, to them is delegated the exclusive power to determine and locate the route over, under, through or across the streets, avenues or lands in the city. A proviso requires that before such location shall become permanent, the consent of the owners of one-half in value of the property bounded on that portion of the street upon which it is proposed to construct the road shall be first obtained, or in case it cannot, then the determina- tion of three commissioners appointed by the Supreme Court at General Term given after due hearing, and confirmed by the court, that the railway ought to be constructed, is to be taken in lieu of such consent, and also requires that the consent of the local authorities having control of the streets be first obtained. This proviso is substantially a transcript of the State Constitution (article 3, § 18).

Any necessity for inquiry into the validity and constitutionality of this law is superseded by the decision of the Court of Appeals in the matter of *The New York Elevated Railroad Company* (70 N. Y., 327), where it received the sanction and approval of that high tribunal upon all questions that can be here brought up.

The mayor's commission carrying out the intention of the law have determined that the road is necessary and in the exercise of their exclusive power located the route. The consent of the property holders could not be obtained, and the commissioners

contemplated by the statute in that event were appointed by this court, and have made a report of their proceedings which now comes to us for approval, for it must be confirmed by the court before it can stand in place of the consent of the property owners.

The Supreme Court commissioners have coincided with the view of the mayor's commission that the road should be built. Such is the conclusion of two set of resident commissioners, familiar with the affairs of the city, after ample opportunity given to all for a hearing.

A controlling feature in this law is, that the mayor's commission determine the necessity of the railway and the location of its route. With the feasibility of such location the Supreme Court commissioners have no concern, they have only to determine whether the road is to be constructed on the route already selected.

The Supreme Court is vested with neither power nor duty in respect to the location of this route, or the construction of this road, except that by refusing confirmation to the commissioners' report, it can stop the project. But on what ground can we refuse our assent ? Can we, without view and without inquiry, say that the two bodies of men, upon whom the duty of determining the question has been imposed by law, have reached an erroneous conclusion ?

Or do our duties cease with an inquiry whether the proceedings of our commissioners have been regular and fair, and their determination reasonable and just. We incline to the latter view. We think the power is bestowed upon the two sets of commissioners to determine the questions submitted to them respectively, the determination of the latter only to be dependent upon our confirmation for its validity.

Great complaint is made that the route is located on a certain street, but can we certainly say that the determination of the commissioners in that regard is unfair and unjust, or that the injuries to result to private interests by its location there are not counterbalanced by the benefits to the general public, which are to follow, or that the damages to property there are greater than they would be in some other locality. We think these were questions to be settled by the commissioners, and that with their determination we ought not to interfere.

It is made by the law an additional precedent condition to the construction and operation of the road, that the consent thereto of the local authorities having control of the streets shall be first obtained, but that is a requirement entirely independent of any action of the commissioners, or the court. Over that subject we have no control, and whether the consent is given or withheld can have no influence upon our action. If it is not obtained the road cannot be built, but we have no concern with the subject now.

A point was made on the argument that the mayor's commissioners did not fix the route as they were required to do, because they determined in some instances that the railway may be constructed on either of two streets, or on both. This is quite subtile, but not very substantial. The route is fixed for both streets ; all that can be said is that the company is not required to build on both, and that is true of all the streets. The determination of the commissioners is permissive in all cases, and mandatory in none.

Neither can we give force to the objection that the appointment of the Supreme Court commissioners should have been made on the petition of the mayor's commissioners. The party to make the application is not specified by the statute, and so long as the matter was brought to the attention of the court, and the commissioners were appointed and made their report, the requirements of the statute have been sufficiently complied with.

Neither should the report of the commissioners be rejected, because their determination is, in one or two instances, subject to conditions.

Consent is merely withheld until a street is widened, or the Brooklyn bridge completed ; in that event it is given.

The report of the commissioners should be confirmed.

BARNARD, P. J., dissented.

Present — BARNARD, P. J., GILBERT and DYKMAN, JJ.

Report of commissioners confirmed.